UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

------------------------------------------------------------------------------------------------------------------

In re:                                                                                          Case Number:  09-12428-13

DENNIS EARL WIRTH and
MARY ELIZABETH WIRTH,

                    Debtors.

------------------------------------------------------------------------------------------------------------------

MEMORANDUM DECISION
DENYING CONFIRMATION OF THE DEBTORS' PROPOSED PLAN

On May 10, 2010, the Court held a telephonic hearing on confirmation of the debtors' proposed chapter 13 plan.  The debtors were represented by Daniel R. Freund, and the Standing Chapter 13 Trustee was represented by Staff Attorney Leslie Brodhead Griffith.  In his objection to the debtors' proposed plan, the chapter 13 trustee argued that it violated the plain language of 11 U.S.C. § 1325(b)(4) and the requirement that an above-median income debtor must propose a plan with an "applicable commitment period" of not less than five years.  The issue is whether, despite the trustee's objection, the Court can confirm a plan proposed by above-median income debtors that lasts for less than 60 months in a temporal sense but nonetheless offers creditors as much money as the chapter 13 means test would require be paid over that time period.

The debtors concede that they are "above-median income debtors" as defined by the bankruptcy code. Under 11 U.S.C. § 1325(b)(1)(B), if the trustee or an unsecured creditor objects to confirmation, their plan may only be confirmed if it provides that the debtors will apply all "projected disposable income" received during the "applicable

commitment period" toward payments to unsecured creditors. The applicable commitment period is statutorily defined as "not less than 5 years" in the case of above-median income debtors. See § 1325(b)(4)(A). The only statutory exception is that the plan may be for less than three or five years, whichever is otherwise applicable, "but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." See § 1325(b)(4)(B).

According to their Form B22C, the statement of current monthly income and calculation of commitment period and disposable income, the debtors had current monthly income of $8,572.26 and an annualized current monthly income of $102,867.12. The applicable median family income for a family of similar size in Wisconsin was $57,657.00. After calculating their expenses, the debtors indicated on line 59 of Form B22C that they had monthly disposable income of $1,154.67. However, they also claimed $813.24 in "additional expenses" on line 60 of the form. The chapter 13 trustee appears to have accepted the validity of these additional expenses and has not raised an objection to them. However, in his objection to the debtors' plan, the trustee noted that the means test would require at least the payment of $20,485.80 to unsecured creditors, and the trustee's initial plan projections showed payments to unsecured creditors of only $15,870.00.

The debtors' proposed plan is to pay $825.00 per month for 54 months, for a total of $44,550.00, which includes the amounts devoted to attorney's fees and secured claims. In the briefs, the debtors indicate that their plan proposes to pay more to unsecured creditors than the amount required under the means test. The trustee no longer appears to contest the debtors' compliance with the monetary requirements of

the means test. For purposes of this discussion, the Court will assume that there is no dispute that the debtors propose to pay 60 months' worth of their "projected disposable income" as calculated by the means test over the life of their plan.[1] The only question before the Court is whether they may propose a plan which contemplates paying that amount in less than five years.

The debtors have proffered some empirical evidence that plans of 36 or 48 months have a higher likelihood of success than those which stretch for the full five years. For example, in response to discovery requests served by the debtors, the trustee notes that in this district, during the period January 1, 1995, through December 31, 2004, approximately 48.8% of three-year plans were completed and 51.7% of four-year plans were completed.[2] However, during that same period of time, only 36.4% of five-year plans were successfully completed, with more of them ending up dismissed (48.8%, as opposed to 35.5% of three-year plans and

---

[1] In Mancl v. Chatterton (In re Mancl), 381 B.R. 537 (W.D. Wis. 2008), the district court ruled that the projected disposable income analysis was a "mechanical" one based solely on the means test calculation. The Seventh Circuit subsequently indicated in In re Turner, 574 F.3d 349, 356 (7th Cir. 2009), that while the calculation of disposable income under the means test is a starting point, the final calculation may take into consideration certain changes that have occurred in the debtor's financial condition, most notably in that case a "fixed debt" that would disappear because the debtor was surrendering the home associated with the mortgage debt. The Turner court also admonished bankruptcy judges not to engage in "speculation" about the future income or expenses of debtors, but did not establish a bright line as to when consideration of "changes" in a debtor's circumstances drifts into "speculation." Most recently, the Supreme Court rejected the "mechanical" approach to projected disposable income in Hamilton v. Lanning, No. 08-998, 2010 WL 2243704, at *12 (U.S. June 7, 2010), stating that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income which are "known or virtually certain at the time of confirmation." In this case, the trustee has not suggested that the debtors' post-petition financial circumstances would justify a deviation from the means test calculation. Consequently, that issue is not presently before the Court.

[2] The supplied information only related to cases which had been closed as of the dates in question, either through conversion, dismissal, or completion of the plan.

33.9% of four-year plans).³ The debtors suggest that these statistics support their argument against a temporal mandate of a full five years.

The Court agrees that on a logical level, shorter plans seem more likely to succeed simply given that under shorter plans the debtors have less time in which they might default. Indeed, when considering the impact of the "applicable commitment period," one treatise notes:

> [T]he required commitment period of five years if current monthly income is above the state median income will discourage some debtors who might otherwise file chapter 13 cases. It will also make plans more likely to fail. There will be two additional years, 67 percent more time, in which an unexpected drop in income or emergency expense could occur.

Collier on Bankruptcy ¶ 1325.08[4][d] (16th ed). For what it is worth, this Court has long questioned whether the requirements of chapter 13 doom debtors to a repeated cycle of failure, and the trustee's numbers lend credence to the idea that there simply aren't that many "can pay" debtors capable of completing a five-year plan.⁴ However, the starting point for statutory analysis is not a discussion of policy but rather the language of the statute. See Ross-Tousey v. Neary (In re Ross-

---

³ The trustee also supplied statistics that related to closed chapter 13 cases confirmed within the "last ten years," which would include the period of time since the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (or "BAPCPA"). BAPCPA added the provisions at issue in this case. Since BAPCPA became effective in October 2005, the Court considers it unlikely that very many of the "completed" five-year cases referenced by these statistics were confirmed under the new provisions relating to the applicable commitment period for above-median income debtors. Nonetheless, the statistics indicate that over the past ten years, only about 31% of five-year plans in this district were successfully completed, compared to 55.1% of three-year plans and 52.3% of four-year plans.

⁴ See Marianne B. Culhane & Michaela M. White, Article: Catching Can-Pay Debtors: Is the Means Test the Only Way?, 13 Am. Bankr. Inst. L. Rev. 665, 677 (2005) ("[T]he means test will not catch a lot of can pay debtors . . . there are just not that many to catch.").

Tousey), 549 F.3d 1148, 1157 (7th Cir. 2008) ("When the language is plain, the sole function of the courts is to enforce the statute according to its terms.").

In both In re York, 415 B.R. 377 (Bankr. W.D. Wis. 2009), and In re Turner, 574 F.3d 349 (7th Cir. 2009), the courts observed that above-median income debtors must propose plans of five years in length.  For example, in York the court stated that the plan "must be 5 years because the [debtors] are above-median debtors." 415 B.R. at 379.  In Turner, the court noted that a consequence of being an above-median income debtor is the requirement to make payments for "not less than" five years.  574 F.3d at 351. Neither case turned on the precise issue before this Court, nor were these observations determinative of the respective cases.  It appears that this question has divided other courts in the Seventh Circuit.  See In re Nance, 371 B.R. 358, 369 (Bankr. S.D. Ill. 2007) (the applicable commitment period is a "temporal concept"); In re Mathis, 367 B.R. 629, 632 (Bankr. N.D. Ill. 2007) (the applicable commitment period operates as a multiplier).  Nationally, courts have likewise split over the appropriate application of this statutory requirement.  See, e.g., Coop v. Frederickson (In re Frederickson), 545 F.3d 652 (8th Cir. 2008), cert. denied, 129 S. Ct. 1630, 173 L. Ed. 2d 997 (U.S. 2009); Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868 (9th Cir. 2008); In re Meadows, 410 B.R. 242 (Bankr. N.D. Tex. 2009); Grant v. Mosher (In re Grant), 364 B.R. 656 (Bankr. E.D. Tenn. 2007); In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007); Dehart v. Lopatka (In re Lopatka), 400 B.R. 433 (Bankr. M.D. Pa. 2009); In re Brady, 361 B.R. 765 (Bankr. D.N.J. 2007).

The observations in Turner and York appear to be dicta, rather than determinative.  Nonetheless, they are illustrative of the problem the debtors face in arguing for a shorter plan period: the statute certainly seems to say on a straight-forward reading that a court may not confirm a plan proposed by above-median income debtors over the objection of the chapter 13 trustee if the proposed applicable commitment period is less than five years.  This certainly sounds as if the plan must last for that period of time.  It is only when considered in the context of other provisions that a number of courts have noted the actual implication of the statute is "rather murky."  Lopatka, 400 B.R. at 436; see also Frederickson, 545 F.3d at 656 (the statutory language is "not at all clear").  After all, if the purpose of the projected disposable income requirement is simply to provide unsecured creditors with a specific amount of money (i.e, 60 months' worth of an above-median income debtor's "disposable income"), confirming a plan that provides that amount more quickly seems consistent with this goal.[5]  Indeed, this appears to be one of the primary reasons some courts have adopted the "multiplier" approach, as they have concluded that the requirement of an "applicable commitment period" focuses on the amount of money the debtor must pay under the plan, and that a particular plan length is not required.  Lopatka, 400 B.R. at 437.

Still, many courts have ruled to the contrary, concluding that the "applicable commitment period" requirement is temporal in nature and mandates that a

---

[5] In light of Turner and Lanning, however, perhaps it must be asked how a debtor is able to propose such an early payout at the time of confirmation.

chapter 13 plan be of a specific duration for a fixed number of years. In <u>Meadows</u>, the court observed:

> While reasonable minds may differ, this court reads [§ 1325(b)(4)] to present [an above-median income] debtor with two -- and only two -- alternatives. He may pay his creditors in full, in which event he may adopt any plan period up to a maximum of sixty months. Or, alternatively, if he cannot pay his creditors in full, he must submit to a plan period for a full sixty months.

410 B.R. at 245.

As indicated in this statement, the <u>Meadows</u> court rejected the notion that there might be an exception to the "applicable commitment period" for a chapter 13 debtor with no disposable income at all. Admittedly, such scenarios present a more difficult challenge because unsecured creditors will receive the same amount (i.e., nothing) no matter how long the plan lasts. In <u>Kagenveama</u>, the Ninth Circuit ruled that the applicable commitment period requirement did not apply to a debtor with no projected disposable income. 541 F.3d at 876; <u>see also</u> <u>In re Davis</u>, 392 B.R. 132 (Bankr. E.D. Pa. 2008) (applicable commitment period did not apply to debtors with no projected disposable income); <u>In re Green</u>, 378 B.R. 30 (Bankr. N.D.N.Y. 2007) (if there is no disposable income, plan can last for less than five years).

This Court need not determine how to apply § 1325(b)(1)(B) to a debtor who has no monthly disposable income at all. In this case, the debtors are above-median income, have monthly disposable income, and have proposed a plan which is 54 months in length, only a few months less than the term demanded by the trustee. They suggest that allowing them to propose a plan of less than 60 months might give them a better chance of successfully completing their reorganization efforts. Since the trustee has not challenged their calculation of disposable income, they could also make smaller

7

monthly payments for 60 months and set the difference aside in an emergency fund, or simply give themselves a bit more leeway each month going forward. Regardless of the practicalities of what they might do with their money, it appears clear that Congress envisioned that they would be required to submit to a plan which lasted for a full 60 months, not some lesser period, if someone objected to their plan.

Despite logical arguments to the contrary, on balance the statutory language simply does not lend itself to the "multiplier" approach. Under § 1325(b)(1)(B), if there is an objection to confirmation, the court may not confirm the plan unless it provides

> that all of the debtor's projected disposable income *to be received in the applicable commitment period beginning on the date that the first payment is due under the plan* will be applied to make payments to unsecured creditors under the plan. [Emphasis added].

The words used in the statute are temporal in nature. In re Heyward, 386 B.R. 919, 923 (Bankr. S.D. Ga. 2008). If Congress wanted to create a mere multiplier when constructing the projected disposable income formula, it knew how to draft such an instruction. In re Royal, 397 B.R. 88 (Bankr. N.D. Ill. 2008). Indeed, as the Supreme Court observed in Lanning, Congress rarely uses the word "projected" to mean simple multiplication.

> By contrast, we need look no further than the Bankruptcy Code to see that when Congress wishes to mandate simple multiplication, it does so unambiguously - most commonly by using the term "multiplied." See, e.g., 11 U.S.C. § 1325(b)(3) ("current monthly income, when multiplied by 12"); §§ 704(b)(2), 707(b)(6), (7)(A) (same); § 707(b)(2)(A)(i), (B)(iv) ("multiplied by 60"). Accord, 2 U.S.C. § 58(b)(1)(B) ("multiplied by the number of months in such year"); 5 U.S.C. § 8415(a) ("multiplied by such individual's total service"); 42 U.S.C. § 403(f)(3) ("multiplied by the number of months in such year").

Lanning, 2010 WL 2243704, at *7.

The debtors suggest that the projected disposable income analysis is simple: once their monthly disposable income is calculated pursuant to the means test, the result is multiplied by 60 months to determine the entire amount the means test mandates must be paid to unsecured creditors over the life of the plan. They believe they are free to propose a plan of any duration, as long as they pay that total amount during the pendency of the plan. But if Congress wanted them to simply make 60 months' worth of payments, Congress certainly could have specified a calculation methodology with less emphasis on the temporal requirement. In keeping with the examples noted in Lanning, the statute could have easily provided that projected disposable income is "disposable income, multiplied by sixty" in the case of an above-median income debtor. But that is not what Congress said, and that choice "must have been deliberate." Royal, 397 B.R. at 97.

The statute says that the plan may be confirmed over the objection of the trustee only if all of the debtor's monthly disposable income to be received during the applicable commitment period is devoted to the payment of allowed unsecured claims. In fact, if the statutory definition of "applicable commitment period" from § 1325(b)(4) is inserted into § 1325(b)(1)(B), the emphasized portion of the provision would be read to require payment of projected disposable income "to be received in the [not less than five years] beginning on the date that the first payment is due under the plan." This is also consistent with the legislative history of BAPCPA, which indicates that chapter 13 plans will have a "5-year duration" in certain cases, and describes the changes to § 1325(b) as providing that a debtor must make payments "over a period that is not less than five

9

years" if the debtor's income exceeds certain monetary thresholds.  See H.R. Rep. 109-31 (Part I), 2005 U.S.C.C.A.N. 88, 146.

Further, § 1325(b)(4)(B) provides that the applicable commitment period may be less than the required three or five years only if the plan provides for full payment of all allowed unsecured claims.  Admittedly, it is possible to construe § 1325(b)(4)(B) narrowly in order for it to retain some meaning absent a temporal requirement.  For example, in Lopatka the court noted that interpreting § 1325(b)(1) to create a minimum temporal requirement "seems at odds" with § 1322(d), which sets a *maximum* plan length.[6]  The court observed:

> In the case of an above median debtor, such as in the present case, the statute requires that the plan payments not extend for more than five years.  § 1322(d)(1).  However, in the present matter, the Trustee argues that § 1235(b)(1)(B) also governs plan length and that § 1325(b)(4)(B) helps to set a *minimum* plan length of "not less than 5 years."  Section 1322 does set mandatory requirements for Chapter 13 plans. [The court does] not find that setting a maximum plan length sets a minimum plan length any more than setting a maximum speed limit imposes a minimum speed limit. [Emphasis in original].

400 B.R. at 438.  After declining to interpret the statute as containing a temporal requirement, the Lopatka court construed § 1325(b)(4)(B) to simply mean that "the debtor would not need to pay more than the total value of all allowed unsecured claims."  Id. at 439.

As indicated previously, however, the language of § 1325(b)(1) seems more conducive to the "temporal" reading, and the language of § 1325(b)(4)(B) is actually consistent with this perspective.  Specifically, it provides that the

---

[6] Section 1322(d) provides that for above-median income debtors the plan may not provide for payments over a period that is *longer* than five years, while for below-median income debtors the plan may not last for more than three years.

10

applicable commitment period "may be less than 3 or 5 years . . . but only if the plan provides for payment in full of all allowed unsecured claims *over a shorter period.*"  Much of this provision would be surplusage if § 1325(b)(1) imposed no temporal requirement.  <u>Heyward</u>, 386 B.R. at 923.  There is a conceptual problem with the interplay of § 1325(b)(4)(B) and § 1322(d) only if one assumes that Congress did not intentionally draft § 1325(b)(1) to mandate that in the event of an objection, the debtors would be required to perform, as it were, "to the max."  That is certainly a logical reading of the statute, and one that seems consistent with Congressional intent.[7]  This conclusion does not render § 1322(d) meaningless, as those requirements apply to all proposed plans and to the treatment of all claims, including secured or priority claims which a debtor might otherwise attempt to pay over more than five years but for the cap on plan length found in the statute.

Given the temporal language used by Congress and despite logical arguments to the contrary, this Court finds itself constrained to adopt the perspective that the statute means precisely what it appears to say.  In light of the trustee's objection, the debtors in this case are obligated to pay their "projected disposable income" over a plan that lasts for five years, and the trustee's objection to confirmation must be sustained.[8]

---

[7] Indeed, the legislative history states that §§ 1322(d) <u>and</u> 1325(b) have been amended to provide for plans of five years' duration in the context of above-median income debtors.  <u>See</u> H.R. Rep. 109-31 (Part I), 2005 U.S.C.C.A.N. 88, 146.

[8] It appears that after the May 10 hearing, the debtors amended their plan, and the chapter 13 trustee has indicated that he has no objection to it.  That plan will be confirmed by separate order.  One final observation about the underlying practicalities of the case seems appropriate.  In his briefs, the chapter 13 trustee has suggested that the debtors
(continued...)

Dated:  June 28, 2010

BY THE COURT:

/s/ Thomas S. Utschig

---

Hon. Thomas S. Utschig
U.S. Bankruptcy Judge

---

[8](...continued)
were "required" to propose a 60-month plan, and that is not completely accurate.  Section 1325(b)(1) provides that in *the event of an objection*, the court may only confirm a plan if it meets the requirements of the applicable commitment period.  Absent an objection to confirmation, the temporal requirement of § 1325(b)(4) may "be avoided altogether."  Meadows, 410 B.R. at 247.  The decision to file an objection in a particular case would appear to be within the discretion of the trustee, who must decide whether doing so is in the best interest of unsecured creditors.